UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

IN RE:

Reggie Turner,                                              Case No. 09-53722-wsd
Jahada Turner,                                              Chapter 7
                                                            Hon. Walter Shapero
      Debtors.
_____/

STATE OF MICHIGAN, DEPARTMENT
OF ENERGY, LABOR, AND ECONOMIC
GROWTH, UNEMPLOYMENT
INSURANCE AGENCY,

      Plaintiff,

v.                                                          Adv. Pro. No. 09-5413

REGGIE TURNER,

      Defendant,

JAHADA TURNER,

      Defendant.
_____/

**OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

      This matter came before the Court upon Plaintiff Michigan Department of Energy, Labor & Economic Growth, Unemployment Insurance Agency's Motion for Summary Judgment seeking certain debts be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), and (a)(7). Defendants Reggie and Jahada Turner filed their Response to the Motion and a hearing was held.

**I.**

      Prior to the petition date, Jahada Turner ("Turner") was employed as a social worker at the Lula Belle Service Center. Turner alleges that sometime during January

1

2006, the Director of the Center, along with the Center's Human Resources Director, advised her that the Center was in danger of closing and that she should consider herself laid off and apply for benefits with the Unemployment Insurance Agency. Turner further alleges that those same individuals advised her that if she continued to provide social work services to the Center's clients, the Center would pay her the difference between her salary and the unemployment benefits she received and that such arrangement was "perfectly legal." Thereafter, for the weeks ending January 28, 2006 through July 22, 2006, Mrs. Turner continued to work as a social worker at Lula Belle Service Center while collecting unemployment benefits totaling $8,216 from the State of Michigan.

On June 18, 2008, the Unemployment Insurance Agency issued its Notice of Redetermination finding that Turner had ineligibly received $8,216 as a result of her undisclosed employment with the Lula Belle Service Center and determining her acts to be intentional. The Notice of Redetermination required that the $8,216 be repaid and imposed penalties in the amount of $32,864. Turner had 30 days in which to appeal the Notice of Redetermination and she failed to do so.

On April 30, 2009, Jahada and Reggie Turner filed their voluntary chapter 7 petition. On July 14, 2009, the Michigan Department of Energy, Labor & Economic Growth, Unemployment Insurance Agency instituted this action seeking to have the debts excepted from discharge under § 523(a)(2) and (a)(7).

## **II.**

The Unemployment Insurance Agency argues that the $8,216 in overpayments are non-dischargeable pursuant to § 523(a)(2)(A) and (a)(2)(B) and that the $32,864 in penalties are non-dischargeable pursuant to § 523(a)(7). The Agency further argues that the Redetermination is entitled to preclusive effect in this proceeding.

The Defendants argue that there is a factual issue which precludes summary judgment on the § 523(a)(2) claim, i.e., that Jahada Turner was acting upon the advice of her employer and was told what she was doing was "perfectly legal." Defendants further argue that § 523(a)(7) applies to a penalty only if the underlying debt for which the penalty has been imposed is itself non-dischargeable. Finally, Defendants argue that although Reggie Turner is named as a defendant in this adversary proceeding, there have

2

been no allegations made involving him and the proceeding should be dismissed as to him.

### III.

Fed. R. Bankr. P. 7056 makes Rule 56 of the Federal Rules of Civil Procedure applicable to bankruptcy proceedings. Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the lack of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden has been met, "the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue." *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991). A "genuine" issue exists and summary judgment is not proper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The evidence and all inferences to be drawn therefrom, should be viewed in the light most favorable to the non-moving party. *Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986).

### IV.

Under section 727 of the Bankruptcy Code, a debtor may obtain a general discharge form all debts that arose before the order for relief. 11 U.S.C. § 727(b). However, there are exceptions for certain obligations, including debts for money obtained by fraud or by use of a false statement in writing, 11 U.S.C. § 523(a)(2)(A) & (B), and, in certain instances, debts to the extent they are "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit." 11 U.S.C. § 523(a)(7). The party objecting to discharge has the "burden of proving by a preponderance of the evidence that a debt is excepted from discharge under section 523(a) of the Bankruptcy Code." *Meyer v. IRS (In re Meyers)*, 196 F.3d 622, 624 (6th Cir. 1999).

### a. Collateral Estoppel Does Not Apply to Redetermination

The Redetermination which found that Jahada Turner had ineligibly received $8,216 as a result of her undisclosed employment was conducted pursuant to MCL § 421.32a. The Redetermination did not involve a hearing for which Turner was given prior notice and an opportunity to appear. It was, in effect, an intra-agency administrative determination; Turner's sole right with regard to which was to appeal it within 30 days (or one year in certain circumstances) of receiving notice.

The doctrines of issue preclusion and claim preclusion, i.e., collateral estoppel and res judicata, are applicable to administrative decisions in certain circumstances. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). As the Supreme Court noted in *University of Tennessee v. Elliott*:

> Having federal courts give preclusive effect to the fact-finding of state administrative tribunals also serves the value of federalism. Significantly, all of the opinions in *Thomas v. Washington Gas Light Co.*, 448 U.S. 261 (1980), express the view that the Full Faith and Credit Clause compels the States to give preclusive effect to the fact-findings of an administrative tribunal in a sister State. *Id.*, at 281 (opinion of STEVENS, J.); 287-289 (WHITE, J., concurring in judgment); 291-292 (REHNQUIST, J., dissenting). The Full Faith and Credit Clause is of course not binding on federal courts, but we can certainly look to the policies underlying the Clause in fashioning federal common-law rules of preclusion. "Perhaps the major purpose of the Full Faith and Credit Clause is to act as a nationally unifying force," *id.*, at 289 (WHITE, J., concurring in judgment), and this purpose is served by giving preclusive effect to state administrative fact-finding rather than leaving the courts of a second forum, state or federal, free to reach conflicting results.

478 U.S. 788, 798-799 (1986).

In this case, the Redetermination was issued without giving Turner notice or an opportunity to appear. In the absence of these occurrences, it cannot fairly be said that the Michigan Unemployment Insurance Agency was acting in a judicial capacity. Turner's only opportunity to contest the facts alleged came after the Redetermination -

she was never given the opportunity to contest or litigate the factual determinations upon which the Redetermination was based prior to the same being issued (indeed there is no evidence that she was even made or was aware prior to the ruling that the matter was pending).

Plaintiff, contending that collateral estoppel applies to administrative proceedings under Michigan law filed a post-hearing brief in support of its contention wherein it pointed to the Michigan Supreme Court's decision in *Roman Cleanser Co. v. Murphy*, 386 Mich. 698 (Mich. 1972). The facts of that case are readily distinguishable from those present here, most notably, the party that was estopped in that case had notice of the proceedings, and indeed objected to the claim, prior to the decision. Here, Turner was never provided notice of the Redetermination hearing or given an opportunity to contest the matter *before* a decision was entered. Accordingly, collateral estoppel and res judicata are not applicable.

### b. 11 U.S.C. § 523(a)(2)

Section 523(a)(2)(A) & (B) provides:

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –

    (2) for money, property,[1] services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

        (B) use of a statement in writing –

            (i) that is materially false;

            (ii) respecting the debtor's or an insider's financial condition;

---

[1] The term "property" as used in section 523(a)(2)(A) "denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process. *Gleason v. Thaw,* 236 U.S. 558 (1915).

5

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

Subsections (A) and (B) are mutually exclusive. A claim based on false financial statements must be brought under subsection (B) and the special conditions set forth in subsection (B) must be met. *Collier on Bankruptcy*, ¶ 523.08[1] at 523-42.1.

In this matter, Plaintiff attempts to proceed under § 523(a)(2)(A) and § 523(a)(2)(B), despite the fact that subsections (A) and (B) are mutually exclusive. When the Court inquired at the hearing as to which written statements concerning Turner's financial condition were being relied upon for the § 523(a)(2)(B) claim, Plaintiff's counsel informed that Turner had stated in writing that she was not presently employed. Putting aside for the moment the fact that the Plaintiff has failed to bring forth any actual documentation of such a written statement by Turner (or explanation for the absence of such), even if it had, it is rather doubtful that such would constitute a statement in writing respecting financial condition for purposes of § 523(a)(2)(B).[2]

---

[2] Courts have not settled on a uniform construction of what constitutes a statement of "financial condition" so as to be within Subsection B. *See*, *e.g*., *In re Bonefas*, 41 B.R. 74 (Bankr. N.D. Iowa 1984) (To constitute written statement respecting financial condition of debtor under 11 U.S.C. § 523(a)(2)(B) there must be combined entries stating income, assets, and/or debts; single statement that debtor made $ 1,700 monthly is not financial statement.); *Am. Nat'l Bank v. Dalcourt (In re Dalcourt)*, 354 B.R. 868 (Bankr. N.D. Iowa 2006) (Where bank contended that its claim against debtor was excepted from discharge pursuant to either 11 U.S.C. § 523(a)(2)(A) or 523(a)(2)(B), bank's claim, to be excepted from discharge, had to be excepted under 11 U.S.C. § 523(a)(2)(B) because credit application for vehicle financing was statement in writing respecting debtor's financial condition and, coupled with credit bureau report, application provided overall view of debtor's ability to pay debt.); *Signet Bank/Virginia v. Hale*, 139 B.R. 41 (Bankr. M.D. Fla. 1992) (Credit-card debt cannot be excepted from discharge under 11 U.S.C. § 523(a)(2)(B) because credit-card application is not statement respecting debtor's financial condition as it does not require any information regarding debtor's liabilities and nothing regarding his assets, except that he owned rather than rented his home.); *First Int'l Bank v. Kerbaugh (In re Kerbaugh)*, 162 B.R. 255 (Bankr. D.N.D. 1993) (Credit application qualifies as statement made in writing respecting Chapter 7 debtors' financial condition, although ostensibly written solely by debtor husband, where it was signed by both debtors, application which served as central component in decision for extension of credit required debtors to provide "true and complete" information regarding their monthly income, monthly rental payments, and credit information portraying both aggregate and monthly payments on individual indebtedness; although credit application neither portrayed nor required financial particularity of financial statement such as balance sheet or profit and loss statement, such requirement is not imposed by mandates of 11 U.S.C. § 523(a)(2)(B); credit application, which was held out by debtors as something on which bank should rely, permits realistic assessment of debtors' creditworthiness and financial capacity by virtue of disclosure of income and indebtedness.); *Lazaron v. Lucas (In re Lucas)*, 386 B.R. 332 (Bankr. D.N.M. 2008) (Statement regarding debtor's employment was certainly relevant to his apparent ability to pay rent, but did not represent his overall financial condition where residential rental application did not purport to

With regard to Plaintiff's § 523(a)(2)(A) theory, a necessary element is fraudulent intent. Intent, under the Sixth Circuit Court of Appeals decision in *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998), is measured subjectively. A debtor intends to deceive a creditor "when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor." *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001). Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . A 'dumb but honest' [debtor] does not satisfy the test." *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997) (citations omitted). A debtor's fraudulent intent

> may be inferred from the totality of the circumstances. The bankruptcy court must consider whether the totality of the circumstances' presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.' The court may consider not only the debtor's conduct at the time of the representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of the actionable representations.

*Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Col. 2002) (quoting *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (10th Cir. BAP 2000) (citations omitted)). As the court in *Haney v. Copeland (In re Copeland)*, 291 B.R. 740 (Bankr. E.D. Tenn. 2003) explained:

> Proving the Debtor's intent to defraud is similar to proving the Debtor's knowledge and/or recklessness as to the falsity of the representations made. Because intent is a purely subjective question, the court must examine the totality of the Debtor's actions to determine if she possessed the requisite intent to deceive the Plaintiffs. Any benefit of the doubt must be resolved in favor of the Debtor, as § 523(a)(2) is strictly construed in her favor.

(citations omitted).

In this matter, Turner claims to have acted under the belief that her actions were "perfectly legal." This raises a genuine issue of material fact as to whether Turner intended to defraud the Unemployment Insurance Agency in her representations to it.

---

reflect all of his assets and liabilities; it provided information about certain aspects of his financial condition, but because it did not present overall picture of his net worth, it did not fall within narrow scope of "statements respecting debtor's financial condition.").

The existence of a genuine issue of material fact requires that the Court deny summary judgment as to the amounts sought to be excepted from discharge under § 523(a)(2)(A).

### **c. 11 U.S.C. § 523(a)(7)**

Plaintiff seeks to except the $32,864 in penalties pursuant to § 523(a)(7). For a debt to be excepted from discharge under § 523(a)(7), it must be a penalty which:

> (1) arise[s] as a punishment or sanction for some type of wrongdoing by the debtor and not merely be an enhanced monetary remedy for what is essentially a breach of contract; (2) [is not] compensation for actual pecuniary loss; (3) [is] payable to a governmental unit; and (4) [is] for the benefit of a governmental unit.

4-523 *Collier on Bankruptcy* P 523.13.

All of the above elements are present in this case. The debt arose as a penalty for wrongfully receiving unemployment benefits. It is not compensation for the actual pecuniary loss (which is covered by the ordered repayment of the $8,216 received); it is payable to a governmental unit, i.e., Michigan Department of Energy, Labor & Economic Growth, Unemployment Insurance Agency; and it is for the benefit of that governmental unit. There is no genuine issue as to any of these facts.

In her Response brief, Turner asserts that § 523(a)(7) applies to a penalty only if the underlying debt for which the penalty has been imposed is itself non-dischargeable. The case she cites in support, however, *In re Tauscher*, 7 B.R. 918, 920 (Bankr. E.D. Wis. 1981) does not stand for such a proposition. That case, which dealt with penalties arising from child labor law violations, stated with regard to the issue:

> Tauscher has referred to that portion of § 523(a)(7) which provides that tax penalties are nondischargeable only if the underlying tax is itself nondischargeable. He argues that since the back wages were admittedly dischargeable, the administrative penalties should also be discharged. The difficulty with the argument is that back wages are not taxes so as to be covered by that language in § 523(a)(7). Furthermore, the child labor penalties are independent of and not related to the claim for unpaid wages. This court believes and does find that the penalties here in dispute are not dischargeable.

*In re Tauscher*, 7 B.R. at 920. While case law on the issue is rather sparse, the authority the Court was able to find in its research indicates that certain penalties are non-

8
09-05413-wsd    Doc 40    Filed 03/05/10    Entered 03/05/10 16:31:51    Page 8 of 10

dischargeable under § 523(a)(7) regardless of whether a related debt is itself dischargeable. *See*, *e.g.*, *In re Carracino*, 53 B.R. 513 (Bankr. D.N.J. 1985) (fines imposed for water pollution not dischargeable under § 523(a)(7), though debt owed to reimburse state for cleaning up river was dischargeable).

The word "penalty" is commonly defined as a term which "involves the idea of punishment, corporeal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment." Black's Law Dictionary (5th ed. 1979). The statutory language which specifically excludes from its purview actual pecuniary loss reinforces a penalty's separation for purposes of § 523(a)(7) from any associated loss. In this case, that associated loss would be the underlying obligation that Turner argues is a defense if it is itself dischargeable. It is likely that in many if not most cases where pecuniary "penalties" are imposed, they are in addition to and either calculated in reference to, or as an overlay upon, some underlying damages or compensation. Regardless, in the absence of some clear legislative history or strong public policy indicating otherwise (neither of which has been pointed to in this case), one should not interpret or read into a statute a meaning that would appear to contravene its basic purpose and /or eliminate or materially narrow its application.

The $32,864 in penalties clearly satisfying the elements of § 523(a)(7) and the Court will award summary judgment as to that portion of the debt.

### d. Dismissal of this Proceeding as to Reggie Turner

As Defendants point out in their Response, Plaintiff fails to make any allegations regarding named defendant Reggie Turner. Given that Defendants' request that Reggie Turner be dismissed from the suit came in their Response and not in an affirmative motion for summary judgment (to which Plaintiff would have to respond), the Court will not at this time *order* that Reggie Turner be dismissed from this proceeding. The Court will, however, remind counsel of the duties imposed by Bankruptcy Rule 9011 and the Rules of Professional Conduct, etc. and caution that a party should not unnecessarily be kept in a lawsuit after such point it becomes clear that there is not a factual or legal basis to warrant such.

## V.

For the reasons set forth above, the Court will deny summary judgment as to Plaintiff's § 523(a)(2) claim for the $8,216 in overpayments and grant summary judgment in favor of Plaintiff as to the § 523(a)(7) for the $32,864 in penalties.

Plaintiff shall present an appropriate order.
.

**Signed on March 05, 2010**

            **\_\_\_\_ \_\_/s/ Walter Shapero\_ \_\_\_**
            **Walter Shapero**
            **United States Bankruptcy Judge**